IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAFAYE GASKINS | : | |
| | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | 2:25-cv-01187 |
| | : | |
| CITY OF PHILADELPHIA, *et al.*, | : | |
| | : | |
| *Defendants.* | : | |

**<u>MEMORANDUM</u>**

### I.    Background

At this stage, the Court accepts Plaintiff's well-pled factual allegations as true. On December 10, 1991, Plaintiff Lafaye Gaskins (Gaskins) was sentenced to life without parole for the 1989 Philadelphia murder of Albert Dodson and other related crimes.   At trial, the Commonwealth's star witness, Gloria Pittman (Pittman), testified that she heard gun shots and then witnessed, from her second-floor window, Gaskins flee the abandoned home where Dodson's frozen body was eventually found. *See* Pl.'s Am. Compl. at ¶ 19.   Separately, the Commonwealth's witness Edward Clyburn (Clyburn) testified that he was in the same car as Dodson and Gaskins on the day of the murder and witnessed Dodson exit the car with Gaskins and get into another car containing a third individual.   *Id.* at ¶ 31.   In its closing argument, the Commonwealth leaned heavily on the eyewitness identifications by Pittman and Clyburn as the link between Gaskins and the murder.   *Id.* at ¶ 35.

While incarcerated, Gaskins maintained his actual innocence and persisted in his search for new evidence. In 2012, Gaskins was able to make contact with Pittman. Ultimately, Pittman signed a notarized affidavit, stating that she was coerced by Philadelphia detectives into making false statements. In her affidavit, Pittman indicated that she was pressured for months by Detectives James McNesby and John Cimino to identify Gaskins as the man she saw running from the abandoned house where Dodson's remains were eventually found, even though she had previously repeatedly told them she could not identify anyone. *Id.* at ¶¶ 38, 41. Pittman's affidavit further states that the police threatened to arrest her if she did not identify Gaskins in court at his preliminary hearing. *Id.*

According to the Complaint, these were not idle threats as Pittman had an extensive criminal history[1] and was actively addicted to illegal drugs. *Id.* at ¶ 65. Because of the pressure and her fear of being imprisoned, she identified Gaskins at his preliminary hearing. *Id.* at ¶¶ 41, 65-66. After this initial identification, Pittman again identified him in open court during a suppression hearing and the April 1990 murder trial. *Id.* at ¶ 41.

The Pittman affidavit, amounting to a recantation of the Commonwealth's principal eyewitness testimony, was the primary support for Gaskins' Post Conviction Relief Act (PCRA) petition. *See* 42 Pa.C.S. § 9541, *et seq.* A Philadelphia Court of Common Pleas judge held a two-day PCRA hearing on April 14 and May 12, 2022. At

---

[1]  According to the Amended Complaint, Pittman was "arrested for robbery less than one year before the Dobson murder, and had completed a sentence for a murder conviction only seven years before." Pl.'s Am. Compl. at ¶ 65.

the hearing, Gaskins successfully argued his diligence in pursuing his PCRA claims as well as the merits of those claims. Pl.'s Am. Compl. at ¶ 37. Pittman testified at the hearing and expressly disavowed her 1990 trial testimony and identification of Gaskins and credibly testified that she had never seen Gaskins outside of a courtroom. *See id.* at ¶¶ 42-43.

Gaskins presented additional testimony from a Pennsylvania Innocence Project Investigator, John Butler (Butler), and an expert witness, Professor Jules Epstein (Epstein). In 2019 Butler visited and took updated photos of the area around the 1989 crime scene and examined photos from the original investigation file. With this foundation, he testified regarding Pittman's ability to view the suspect at the time of Dodson's murder. *Id.* at ¶¶ 47-50.

Epstein was accepted as an expert in eyewitness identification and presented testimony regarding certain estimator and system variables that raise the risk of misidentifications. Epstein testified that these variables would have negatively impacted Pittman's ability to identify Gaskins. Epstein further testified that certain system variables[2] could negatively impact the ability of eyewitness Clyburn to testify accurately as well. *Id.* at ¶¶ 51-64.

In 2023, the PCRA court granted Gaskins' petition and vacated his murder conviction. Unfortunately, the April 14, 2022, testimony of witnesses Pittman and Butler was either lost or unrecorded due to a technical problem with the Court's transcription service. Without this record evidence, and the Philadelphia District

---

[2]    Based on the complaint "system variables" refers broadly to the government's procedures with respect to eyewitness identifications after a crime but before the trial.

Attorney's apparent posture on a retrial, Gaskins accepted a plea to third degree murder. Gaskins was sentenced to time-served and released after more than 30 years in prison. *Id.* at ¶ 2-3.

On March 5, 2025, Gaskins filed the instant matter seeking relief under 42 U.S.C. § 1983 against the City of Philadelphia (City) and individual police officers (Individual Defendants) James McNesby (McNesby), John Cimino (Cimino), Joe Walsh (Walsh), Michael Duffy (Duffy), and Chester Koscinski (Koscinski), for alleged police misconduct in violation of his constitutional rights. Specifically, Gaskins' Amended Complaint asserts claims for (Count 1) deprivation of liberty without due process of law and denial of a fair trial, (Count 2) civil rights conspiracy, and (Count 3) failure to intervene against all Individual Defendants. Gaskins' Amended Complaint further alleges (Count 4) supervisory liability against Koscinski only and (Count 5) a municipal liability against the City.

Before this Court are two motions to dismiss – one from the City and a separate motion from officers McNesby and Walsh, only. Dkts. 31, 32 (hereinafter, City's Motion/Brief and Officers' Motion/Brief, respectively). Defendants' Motions assert several grounds for dismissal which are addressed below. Plaintiff has lodged his responses to each, and the Defendants' Motions are now ripe for decision.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (internal quotation omitted). The Third

Circuit has a three-step process to evaluate the plausibility of a claimant's grounds for relief. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). First, the Court observes the elements that the claimant must plead to state a claim. *Id.* Second, the Court must disregard any formulaic recitation of the elements of a claim or other allegations that are "so threadbare or speculative that they fail to cross the line between conclusory and the factual." *Id.* at 327-328 (citation omitted). Third, the Court takes the remaining allegations and – assuming their veracity – construes them in the light most favorable to the claimant and draws all reasonable inferences in their favor. *See id.* at 328.

### III. Gaskins' municipal claim against the City is adequately pled and may proceed to discovery

A municipal claim, commonly referred to as a *Monell*[3] claim, may proceed against a municipality in two ways: (1) the claimant alleges that they were injured by an unconstitutional policy or custom of the municipality; or (2) the claimant alleges that their injuries were caused by a failure or inadequacy by the municipality that reflects deliberate or conscious indifference on the part of the municipality. *See Forrest v. Parry*, 930 F.3d 93, 105 (3d. Cir. 2019). Gaskins seeks to proceed under both theories. Notably, *Monell* claims are generally not amenable to resolution at the motion to dismiss stage and plaintiffs are entitled to a highly favorable standard of review. *Hicks v. City of Philadelphia*, No. CV 22-977, 2023 WL 5278713, at *11 (E.D. Pa. Aug. 16, 2023) (Murphy, J.).

---

[3]    *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

To proceed under a policy/custom theory, a plaintiff must demonstrate a given course of conduct so well-settled and permanent as to virtually constitute law. *See Forrest*, 930 F.3d at 105-106. The plaintiff must further allege the government's policy or custom is the proximate cause of their injury. *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019). "This requires an affirmative link between the custom and the constitutional violation alleged, which in turn occurs when the City knew of similar unlawful conduct in the past ... failed to take precautions against future violations, and that its failure, at least in part, led to [the] injury." *Hicks*, 2023 WL 5278713, at *9 (cleaned up).

To proceed under a failure or inadequacy claim, a plaintiff must establish the municipalities actions amount to "deliberate indifference." *Forrest*, 930 F.3d at 106. This requires a showing that: "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* Allegations of a failure to train, supervise, or discipline can establish a viable cause of action under this alternative *Monell* framework. *See Hicks*, 2023 WL 5278713 at *9.

### a. Policy or custom theory

Gaskins' Amended Complaint specifically alleges unconstitutional misconduct on the part of the City, including the use of coercive techniques in interviews, the fabrication of inculpatory evidence and the fabrication of incriminating statements from witnesses, suspects, and arrestees by coercion. Pl.'s Am. Compl at ¶ 116. As

evidence of the City's unlawful customs, Gaskins cites a plethora of similar investigations – spanning roughly 30 years – alleging similar unconstitutional misconduct. *See id.* at ¶ 76.

In its Motion to Dismiss, the City posits that Gaskins cites "temporally and substantively irrelevant and remote examples of police misconduct that fail to plausibly state a *Monell* claim." City's Br. at 6. The City further argues that Gaskins' Amended Complaint fails to plausibly state that the City was deliberately indifferent toward the specific constitutional violations alleged and that it fails to support a plausible inference that the City was the moving force behind his harm. *Id.* at 12, 16.

This Court disagrees. The examples Gaskins cites clearly square with his assertions regarding Pittman's affidavit, and PCRA testimony, specifically that the police repeatedly questioned her after she stated that she did not see the suspect well and that they threatened her with incarceration unless she identified Gaskins as the suspect. Pl.'s Am. Compl. at ¶¶ 37-38. Even if this Court were to accept the City's position that this sample, viewed in its entirety, is temporally and substantively irrelevant in light of Gaskins' specific allegations of misconduct, the Court finds that investigations beginning in 1980 are sufficiently proximate to Gaskins' investigation and trial to infer an awareness on the part of the City of similar unlawful conduct. *See Thomas v. City of Philadelphia,* No. CV 17-4196, 2019 WL 4039575, at *19-*21 (E.D. Pa. Aug. 27, 2019) (Pratter, J.); *cf. Diaz v. City of Philadelphia*, 670 F. Supp. 3d 174, 182-183 (E.D. Pa. 2023) (finding alleged unconstitutional conduct that occurred *after* decedents death insufficient to demonstrate custom or causation). It cannot be

said that these incidents are so qualitatively dissimilar that when considered in the aggregate, the City would have been unaware of potential unconstitutional activity on the part of its officers.[4]

Gaskins further cites a history of watchdog reporting covering public investigations of police corruption and misconduct, the likes of which he alleges caused his wrongful incarceration here.[5]  *Id.* at ¶¶ 81-82.  According to Gaskins, it follows that the City would have been on actual or constructive notice of this unconstitutional misconduct but repeatedly failed to make any meaningful changes.  *Id.* at ¶¶ 116-117.  Based on a reasonable reading of the Amended Complaint, there are sufficient factual allegations at this stage to support Gaskins' claim that the City knew from prior instances that its officers were engaging in the unconstitutional conduct of coercing false statements and testimony from witnesses.[6]

---

[4]     This Court is hesitant to adopt the City's narrow view in this regard.  *See Dennis v. City of Philadelphia*, No. CV 18-2689, 2024 WL 1604207, at *1-*3 (E.D. Pa. Apr. 12, 2024) (Sánchez, J.) (rejecting defendants' motions *in limine* seeking to preclude evidence of police misconduct defendants believed to be too remote or dissimilar) (*appeal pending*, 3d Cir. Case No. 24-2670).

[5]     Similar reporting has recently been cited in the Eastern District of Pennsylvania to advance cases to the next stage of litigation.  *See Hicks*, 2023 WL 5278713, at *10; *Thomas*, 2019 WL 4039575, at *19 (holding that news reporting combined with other evidence, including expert testimony, was sufficient to send the pattern of misconduct question to a jury).

[6]     It is worth noting that this is not the first case brought in this district alleging fabrication of evidence, generally, to make it past the motion to dismiss stage.  *See Oliver v. City of Philadelphia*, No. CV 25-197, 2025 WL 1902298, at *11 (E.D. Pa. July 9, 2025) (Beetlestone, C.J.); *Hicks*, *supra*; *Maldonado v. City of Philadelphia*, No. CV 22-3474, 2023 WL 4685967, at *10 (E.D. Pa. July 21, 2023) (Murphy, J.); *Gladden v. City of Philadelphia*, No. CV 21-4986, 2022 WL 605445, at *8 (E.D. Pa. Feb. 28, 2022) (Kearney, J.); *Dennis v. City of Philadelphia*, 379 F. Supp. 3d 420, 436 (E.D. Pa. 2019), *aff'd in part*, *appeal dismissed in part*, 19 F.4th 279 (3d Cir. 2021).

### b. Deliberate indifference theory

In addition to the specific criminal prosecutions cited for Mr. Gaskins' policy/custom theory, he also points to several other indicators that the Philadelphia Police Department (PPD) had a pattern or practice of violating constitutional rights and failed to provide meaningful internal discipline to remediate publicly-known misconduct on the part of its officers. Pl.'s Am. Compl. at ¶¶ 85, 88. This includes a reference to a relatively recent Philadelphia Inquirer interview with former PPD homicide detective Michael Chitwood who suggested that detectives sometimes did things they should not have done. *Id.* at ¶ 86. This tends to indicate that training may have been an issue or that the PPD was deliberately indifferent to this malfeasance.

Further, Gaskins points to the 39th District Corruption Scandal in the 1990's as representative evidence of the City's awareness and deliberate indifference to officer misconduct. *Id.* at ¶¶ 81-82. According to Gaskins these "widespread practices … of which the [City] has actual or constructive notice, were allowed to flourish because the [PPD] … declined to implement sufficient training and/or any legitimate" oversight. Pl.'s Am. Compl. at ¶ 119.

In response, the City asserts that Gaskins' allegations are too broad, "lack factual enhancements," and are generally without factual support sufficient to form more than conclusory claims. *See* City's Br. at 12-16. In particular, the City takes exception to Gaskins' broad use of news reporting to support his inference that the City was aware of unconstitutional conduct. *See id.* at 13. While this Court

acknowledges that Gaskins has, in some parts of his Amended Complaint, taken a bit of a scattershot approach, discovery is the appropriate vehicle to narrow the focus. Additionally, other courts in this district have pointed to the same or similar public reporting as indicative of a failure to train or deliberate indifference on the part of the PPD.[7] *See supra*, n.5, (*citing Hicks*, 2023 WL 5278713, at *10 (collecting cases)).

In light of the foregoing, Gaskins has made a plausible showing that police officers who were properly trained and supervised would not have violated his constitutional rights. Accordingly, all aspects of Gaskins' municipal claim against the City may proceed to discovery.

## IV.   Gaskins' claims against Individual Officers

As an initial matter, in his response to the Officers' Brief, Gaskins asks this Court to dismiss his Failure to Intervene claim against the Individual Officers. Pl.'s Resp. in Opp'n to Officers, at 20 (Dkt. 41-1). Additionally, Koscinski has not moved to dismiss Gaskins' supervisory liability claim. Accordingly, the Court does not engage the merits of these claims.

The balance of Gaskins' Amended Complaint asserts claims for deprivation of liberty without due process of law and denial of a fair trial, and a civil rights conspiracy against all Individual Defendants. Officers McNesby and Walsh move to dismiss these claims under several theories, including preclusion under the favorable

---

[7]    While the Court recognizes that it is up to each individual Plaintiff to properly plead their cause of action, the Court wonders at which point these cases might establish a preclusive effect on the City's ability to defeat these sorts of deliberate indifference claims at this stage.

termination rule established by the Supreme Court in *Heck v. Humphrey*,[8] failure to sufficiently plead a deliberate deception and civil rights conspiracy claims, and qualified immunity.

Count 1 of Gaskins' Complaint is titled "42 U.S.C. § 1983 Deprivation of Liberty without Due Process of Law and Denial of a Fair Trial under the Fourteenth Amendment (Against All Individual Defendants)\ [*sic*]."[9] Pl.'s Am. Compl., at ¶¶ 97-100. Specifically, Gaskins alleges that the Individual Officers, in their capacity as employees for the City, deprived him of a fair trial through deliberate deception by way of obtaining false evidence from witnesses Clyburn and Pittman. To state a claim for deliberate deception, a plaintiff must allege an officer's "*knowing* use of false testimony or other fabricated evidence or from concealing evidence to create false testimony to secure a conviction." *Dennis v. City of Philadelphia*, 19 F.4th 279, 291 (3d Cir. 2021) (emphasis in original).[10] To the extent a plaintiff's claims rely on the fabrication of evidence, they must show there is a reasonable likelihood that, without the use of that evidence, they would not have been convicted. *See Gladden,* 2022 WL 605445, at *6 (*citing Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014).

---

[8]      512 U.S. 477 (1994).

[9]      For ease, this Court will refer to Count 1 as the Deliberate Deception claim.

[10]      Throughout this opinion the Court cites to several iterations of *Dennis*. There has been a final judgment rendered in that case, and it is currently on appeal before the Third Circuit at Case Nos. 24-2596, 24-2670.

### a. Gaskins' claims against the Individual Officers are not barred under *Heck v. Humphrey*

The favorable termination rule, commonly referred to as the *Heck* Doctrine precludes a plaintiff from recovering on their Section 1983 action in some circumstances.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486-487 (emphasis in original). Stated differently, courts must evaluate whether a Section 1983 judgment in favor of the plaintiff would necessarily imply the invalidity of an extant conviction or sentence – if it would, the complaint must be dismissed. *See id.* at 487; *see also Herrera v. Agents of Pennsylvania Bd. of Prob. & Parole*, 132 F.4th 248, 255-256 (3d Cir. 2025).

Here, the PCRA court vacated Gaskins' first-degree murder conviction. Instead of standing trial, Gaskins then accepted a plea to the lesser charge of third-degree murder and was sentenced to time served. The Officers argue[11] that Gaskins' third-degree murder conviction for Dodson's death arises out of the same facts and circumstances as his vacated first-degree murder conviction for the same. Officer's

---

[11]     The City and Individual Officers McNesby and Walsh are represented by the same counsel however the City does not make any arguments in its brief with respect to *Heck*. No one has entered an appearance as counsel of record for the other Individual Defendants (Cimino, Duffy, and Koscinski).

Br., at 7. Their argument follows that "[u]nder *Heck* a plaintiff cannot plead guilty for a murder and then file a lawsuit claiming that the evidence that supports his still-intact murder conviction is invalid." *Id.*, at 6 (*citing Moore v. Pennsylvania*, No. 22-1945, 2022 WL 7375509, at *3 (3d Cir. Oct. 13, 2022)).

The Court concedes that the *Heck* Doctrine presents an interesting quandary in the context of a defendant whose original sentence was properly invalidated, but who, in the face of a new trial, subsequently pleads to a lesser charge – the elements of which overlap the original invalid conviction. Neither the Supreme Court nor the Third Circuit have addressed how *Heck* applies these so called two-conviction cases. However, the Third Circuit appears poised to engage this issue directly in the near term. *See Dennis*, 3d Cir. Case Nos. 24-2596, 24-2670. In the interim, this Court is unwilling to part with the common-sense approach applied by the handful of district courts within this circuit that have had the opportunity to address two-conviction cases. *See Bey v. Hediger,* No. CV 24-702, 2025 WL 2636424, at *6-*7 (W.D. Pa. Sept. 12, 2025); *Natividad v. Raley,* No. CV 22-5061, 2025 WL 1550740, at *5 (E.D. Pa. May 30, 2025) (Pappert, J.); *Thomas v. City of Philadelphia*, No. CV 24-4914, 2025 WL 607544, at *5 (E.D. Pa. Feb. 25, 2025) (Pappert, J.); *Carson v. City of Philadelphia*, No. CV 23-2661, 2024 WL 3792223, at *4 (E.D. Pa. Aug. 13, 2024) (Sánchez, J.); *Maldonado*, 2023 WL 4685967, at *5-6; *Gladden,* 2022 WL 605445, at *4-5; *Dennis*, 379 F. Supp. 3d at 436.

In applying *Heck*, courts use a two-step inquiry to determine: "(1) what is the effect, if any, of the particular § 1983 action as well as the second conviction; and (2)

has the conviction or sentence been invalidated[?]" *Gladden*, 2022 WL 605445, at *4 (*citing Dennis*, 379 F. Supp at 429) (cleaned up); *see also Herrera*, 132 F.4th at 256 (explaining *Heck*'s favorable termination requirement). District courts within this circuit have explained that fabrication of evidence claims only bear on the conviction in which the alleged violation occurred and not on a subsequent conviction. *Bey*, 2025 WL 2636424, at *6. Courts have further understood the subsequent conviction to be a "clean conviction" – entirely insulated from previous violations because defendants are aware of those violations when the plead to a subsequent lesser offense. *See id.* at *7.

Here, Gaskins' initial first-degree murder conviction was properly invalidated by the PCRA court's vacatur. *See Maldonado*, 2023 WL 4685967, at *6; *see also Thompson v. Clark*, 596 U.S. 36, 49 (2022) (finding that favorable termination does not require plaintiff to show that criminal prosecution ended with some affirmative indication of innocence). Whether or not Gaskins' hand was forced in his subsequent plea for third-degree murder due to misplaced PCRA testimony is of no moment. It is a clean conviction on which the alleged violations of his constitutional right to a fair trial would not bear. Accordingly, *Heck* does not bar Gaskins' claims against the Individual Officers for fabrication of evidence.

Finally, the Court observes that it would be a confounding state of the law for a municipality or its agents to be able to disclaim Section 1983 liability by presenting the wrongfully convicted with the Hobson's choice of: (1) hazard a new trial; or (2) accept release by way of pleading to a lesser charge – waiving the right to redress for

civil rights violations that precipitated the incarceration in the first place. If this were so, the municipality would always opt for this sort of procedural immunity in two-conviction cases – permitting release but shielding itself from liability with the subsequent "release-plea." By way of further observation, a criminal defendants acceptance of a plea *prior to* a lengthy setntence, after having weighed the costs and benefits of going to trial, is worlds apart from accepting a plea after decades in prison when that plea guarantees freedom.

### b. Officers McNesby and Walsh are not entitled to Qualified Immunity on Gaskins' remaining claims

Gaskins' only surviving claims against the Individual Officers McNesby and Walsh are his fabrication of evidence and conspiracy of the same. Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Halsey*, 750 F.3d at 287. A Constitutional right is clearly established when it would be clear to a reasonable official that what they are doing is violative of that right. *Oliver*, 2025 WL 1902298, at *6. This tends to require "either closely analogous caselaw establishing that a defendant's conduct was unlawful or evidence that the defendant's conduct was so patently violative of the right that reasonable officials would know it to be a violation without guidance from the Court." *Id.* (*citing Mack v. Yost*, 63 F.4th 211, 231-232) (3d Cir. 2023) (cleaned up).

McNesby and Walsh attempt to recast Gaskins' complaint as alleging a *Brady* violation. *See* Officers' Br. at 13. Defendants likely do this to move the operative

"established right" date to 1995 – years after Gaskins' conviction.  *See Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371, 384 (E.D. Pa. 2018) (Pratter, J.) (observing that *Brady* obligations were not clearly established until *Kyles v. Whitely*, 514 U.S. 419 (1995)).  While Gaskins' Amended Complaint occasionally refers to the "withholding of exculpatory evidence," that phrase is always accompanied with allegations that the officers coerced witnesses and fabricated evidence against him.  As discussed above, Count 1 of Gaskins' Amended Complaint is best described as a deliberate deception claim.  *See supra*, n.7.  As such, Defendants' attempt to recharacterize Gaskins' claims are unavailing.

The Court will not belabor the qualified immunity analysis in this matter.  Criminal defendants have had a clearly established right to the due process protection against investigators fabricating inculpatory evidence in furtherance of a prosecution for decades.  *See Oliver*, 2025 WL 1902298, at *6 (*citing Halsey*, 750 F.3d at 295-296); *see also Maldonado*, 2023 WL 4685967, at *3 n.4.  The Officers attempt to couch Gaskins' claims as simply alleging inconsistent statements to prosecutors does not accurately account for the allegations of Pittman's coercion.  *Compare* Pl.'s Am. Compl. at ¶¶ 41, 66, *with* Officers' Br. at 13-14.  In sum, according to both the Pittman affidavit and testimony from his PCRA hearing, at least some of the Individual Officers coerced Pittman into lying under oath and employed overly suggestive identification procedures to solicit Clyburn's identification of Gaskins as well.  Gaskins posits that this deprived him of a fair trial and led to his incarceration

for over 30 years. These facts, accepted as true, are sufficient to state a claim for deliberate deception.

### c. Gaskins' civil rights conspiracy claim may proceed to discovery but claims against Officer Walsh are dismissed *without prejudice*

#### i. Civil Rights Conspiracy Claim

"To state a claim for conspiracy under § 1983, a plaintiff must establish (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Oliver*, 2025 WL 1902298, at *9. (citation omitted). This generally requires a plaintiff to plead the existence of an agreement or meeting of the minds to violate their constitutional rights. *Id.* The complaint must assert the "how, why, or when" of the alleged conspiracy. *See id.* The fact that detectives worked on the same case, absent any other allegation, is generally not enough to infer a meeting of the minds. *See Natividad*, 2025 WL 1550740, at *12.

First, the Court observes that "[c]ivil rights conspiracy claims normally survive a motion to dismiss where the constitutional claims do too." *Maldonado*, 2023 WL 4685967, at *8 (collecting cases); *cf. Thomas*, 2019 WL 4039575, at *1 n.2 (denying summary judgment on conspiracy claims where valid underlying claims survived summary judgment). However, in his response to the Officers' Motion to Dismiss, Gaskins points only to paragraph ¶ 68 of his Amended Complaint in defense of his conspiracy claim. *See* Pl.'s Resp. in Opp'n to Officers, at 21. Paragraph 68 asserts that "all individual Defendants were involved in the Dodson murder investigation … [and] that all individual Defendants learned of the misconduct alleged above by virtue

of their working on the same investigation and their sharing of information with one another."  Pl.'s Am. Compl. at ¶ 68.

Gaskins' conspiracy claim is weakly pled.  But in light of the overarching story told in the light most favorable to Gaskins, primarily through Pittman's affidavit and alleged PCRA testimony, Gaskins has plausibly alleged a conspiracy on the part of the Individual Officers.  In paragraph 66 of the Amended Complaint Gaskins asserts that there were "various interrogations" in which Pittman "was threatened, coerced and forced to provide false information" and that those interrogations were personally conducted by McNesby *and* Cimino.  *Id.* at ¶ 66.  The Amended Complaint also asserts that the Individual Officers recognized the particular leverage they had over her due to her prior record and drug addiction and only engaged this pressure point *after* Pittman's repeated statements that she did not recognize Gaskins.  *Id.* at, ¶¶ 41, 65.  These sections read together sufficiently contemplate the how, when, and why of the alleged conspiracy.  It will be incumbent on Gaskins to develop sufficient record evidence through discovery to bring these claims to trial.

### ii.  Claims against Walsh

On much weaker footing, Gaskins' Amended Complaint states that detectives Duffy, Walsh, and Kosinski were involved in "various interrogations of Mr. Clyburn [in which] they engaged in overly suggestive identification procedures[.]"  Pl.'s Am. Compl. at ¶ 67.  While there may have been a meeting of the minds to coerce certain testimony out of Pittman, alleged constitutional violations *vis-à-vis* Clyburn's interrogations, and subsequent testimony are less obvious.  Against this backdrop,

the Court observes that Walsh participated in a single interrogation of Clyburn on April 27, 1989.  Pl.'s Am. Compl. at ¶ 22.  Based on this Court's reading of the Amended Complaint, officer Walsh was not a party to the repeated suggestive interviews, but instead only participated in one interview of Clyburn where he happened to identify Gaskins.  Being present at this single interview is not enough to maintain a cause of action on these facts against Walsh.  Accordingly, the Individual Officers' Motion is granted as to Walsh only.  Because the underlying constitutional claim against Walsh is dismissed, the attendant civil conspiracy claim is dismissed as well.

## V.    Conclusion

By way of review the parties are left with the following: (1) Gaskins' *Monell* claim against the City may proceed to discovery; (2) Gaskins' claims against Walsh are dismissed *without prejudice*; (3) Gaskins' claims against Individual Officers McNesby, Cimino, Duffy, and Koscinski may proceed to discovery.  The Court reiterates that this case is in its early stages and that some of Gaskins claims require him to plead facts that may be outside of his personal knowledge.  *See Hicks*, 2023 WL 5278713, at *11.  Plaintiff has much work to do in discovery.  If during discovery record evidence is uncovered that inculpates Walsh in the alleged violations, Gaskins may seek leave to amend his complaint for the limited purpose of including Walsh.

In conclusion, the City's Motion to Dismiss is denied *in toto* and the Officers' Motion is granted in part and denied in part.  An appropriate order will follow.

DATED: October 8, 2025                    BY THE COURT:

_____

GAIL WEILHEIMER            J.